UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROY W. ROGERS,

                Plaintiff,

    -v-

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                Defendant.

Case No. 05-CV-7506 (KMK) (LMS)

OPINION AND ORDER

Appearances:

Irwin B. Silverman, Esq.
Spring Valley, New York
*Counsel for Plaintiff*

Susan D. Baird, Esq.
Susan Colleen Branagan, Esq.
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff Roy W. Rogers ("Plaintiff") brings this action against the Commissioner of

Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g), seeking reversal of a decision of

an Administrative Law Judge ("ALJ") denying him Social Security Disability Insurance

("SSDI") benefits.  Defendant and Plaintiff both move for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  The case was referred to Magistrate Judge Lisa M. Smith, who issued a

thorough Report and Recommendation ("R&R"), in response to which Plaintiff filed timely

---

    [1] Michael J. Astrue, the current Commissioner of Social Security, took office as of
February 12, 2007.  Pursuant to Fed. R. Civ. P. 25(d)(1), he is automatically substituted as
Defendant for his predecessor in office, Jo Anne B. Barnhart, who was not specifically named in
Plaintiff's Complaint.  (Compl. 1 (naming "Commissioner of Social Security" as Defendant).)

objections. For the reasons stated herein, Defendant's Motions for Judgment on the Pleadings is

denied, Plaintiff's Motion for Judgment on the Pleadings is granted in part and denied in part,

and the matter is remanded to the ALJ for further proceedings.

## I. Background

### A. Factual Background

Plaintiff is a Vietnam War veteran who is seeking SSDI benefits for the relevant time

period of June 1, 1984 to December 31, 1989. ®. 16-17.) Although the Court adopts the

thorough recitation of facts set forth in the R&R (R&R 1-11), and assumes the Parties'

familiarity with the facts, the Court briefly notes those facts most relevant to Plaintiff's

objections.

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified that he gets "flashbacks from Vietnam," goes "into cold sweats," and

cannot concentrate. (*Id.* at 1013-14.) Plaintiff testified that he had a nervous breakdown five

months after returning from Vietnam, that he was discharged from the army due to medical

reasons, and that he tried to recover from his illness but had frequent relapses. (*Id.* at 1014-15.)

When the ALJ asked Plaintiff if he drank alcohol during the relevant time period, Plaintiff

testified that the Veterans Administration ("VA") did not "really recognize PTSD until 1987"

and that he drank alcohol to "drown[] his sorrow" because he did not "know how to handle his

condition." (*Id.* at 1015.) Plaintiff stated that during his time in Vietnam, his friend died in his

arms and he saw other friends with shrapnel in them. (*Id.*) Plaintiff also testified that for many

years he "lived in cardboard boxes . . . eating out of dumpsters behind McDonalds." (*Id.*)

Plaintiff further testified that during this time he would get "odd jobs sweeping up bars, cleaning

windows, just barely things to stay alive." (*Id.* at 1014.) The Court notes that the entire

transcript of the hearing consists of eighteen pages of testimony from Plaintiff.  (*Id.* at 1007-24.)

## 2.  Medical Evidence

On May 12, 1970, after Plaintiff had gone to the emergency room for "intense agitation" and had stated that "he couldn't take it anymore," Major Gordon Preston, Chief of the Air Force Mental Health Services, diagnosed Plaintiff as having "one of the most classic character disorders [he] had seen to date" with "mild to moderate depression with marked agitation" that was "secondary to frustration from not being able to get what he wanted."  (*Id.* at 934-935.)

On April 20, 1977, the United States Postal Service removed Plaintiff from his employment because of excessive absences.  (*Id.* at 937-40.)  Plaintiff wrote a letter appealing the decision, stating that he was being treated by a Veterans hospital in East Orange, New Jersey for a "nervous condition."  (*Id.* at 954.)  A referral card states that Plaintiff was being treated for a nervous condition on January 1, 1978 (*id.* at 947), but no other medical records were available from the East Orange Veterans Affairs Medical Center, (*id.* at 857).

There is almost no medical evidence in the record from during the relevant time period of June 1, 1984 to December 31, 1989.  Records from Bayonne Hospital show that Plaintiff had surgery on July 20, 1987 for a laceration on his leg and was discharged after one night's stay in the hospital.  (*Id.* at 968-1000.)  After the relevant period, the record shows that Plaintiff was in and out of several hospitals for alcohol detoxification treatment.  (*Id.* at 770-777 (Plaintiff was hospitalized for one month in 1991 at Muhlenberg Regional Medical Center for detoxification); *id.* at 858-909 (Plaintiff was hospitalized for one month in 1994 at the Lyons VA Medical Center); *id.* at 780-807 (Plaintiff was admitted to Bayonne Hospital for several weeks after suffering from a seizure and being diagnosed with delirium tremens).  During Plaintiff's 1994 hospitalization at Lyons VA Medical Center, he was transferred to the psychiatry unit due to

depression and was diagnosed with, inter alia, alcohol abuse, dysthymia, and borderline personality disorder. (*Id.* at 858-62.)

On February 17, 1996, Plaintiff was admitted to Bayonne Hospital after he called the police and stated that he was suicidal. (*Id.* at 814.) Plaintiff was discharged a few days later on February 25, 1997 with a discharge diagnosis of depression and alcohol abuse. (*Id.* at 809, 817-18.) The next day, Plaintiff was admitted to the New York VA Medical Center, where he was diagnosed with PTSD, major depression, and alcohol dependence. (*Id.* at 588-592.) While at the New York VA hospital, Plaintiff reported seeing "death everywhere," seeing "faces of people of Vietnam," hearing voices "of the devil telling him he was a baby killer in Vietnam," and seeing a "Viet Cong soldier [] coming toward him with a gun." (*Id.*) Plaintiff was transferred to Montrose VA Hospital (which is also referred to as the Hudson Valley VA hospital) and treated there for PTSD, depression, and alcohol dependence until March 2000. (*Id.* at 101-667.)[2] During this time, Plaintiff reported "auditory hallucinations," such as hearing voices, and "flashbacks with nightmares from his Vietnam experience" (*id.* at 107), including hearing "the 'tapping' of gun fire (*id.* at 117), and "visual and olfactory and tactile hallucinations related to his battle experience," (*id.* at 268). Dr. Kathleen Fortner, a staff psychiatrist at the Montrose VA hospital, was one of Plaintiff's treating physicians for several months in 1997. (*Id.* at 128-128A, 134, 138, 147, 150, 169.) Dr. Fortner's treatment notes discuss Plaintiff's flashbacks, "nightmares with graveyard themes" (*id.* at 128-128A), and continued auditory hallucinations, (*id.* at 134, 138, 144, 147). Dr. Fortner recommended transferring Plaintiff to a psychiatric unit.

---

[2] On several occasions Plaintiff was transferred out of the Montrose VA hospital to other hospitals for treatments unrelated to his mental health condition. Each time, he was transferred back to the Montrose VA hospital, where he stayed until March 30, 2000. (R. at 101-06; R&R 5-6.)

(*Id.* at 147, 169.)  Medical notes from several other treating physicians discuss Plaintiff's history of PTSD and problems with flashbacks and hallucinations.  (*Id.* at 268 (diagnosing Plaintiff with chronic PTSD and stating that Plaintiff reported flashbacks, vivid dreams, and hallucinations related to Vietnam); *id.* at 104 (noting Plaintiff's history of PTSD); *id.* at 512 (stating that Plaintiff had PTSD symptoms for over 30 years, including severe flashbacks and hearing Vietnam combat sounds).

On March 30, 2000, Plaintiff was transferred to a group home facility.  (*Id.* at 102.) Plaintiff was readmitted to the Montrose VA hospital from July 10, 2001 until August 8, 2001, after reporting that his "symptoms of PTSD had become more frequent and severe," including flashbacks and nightmares.  (*Id.* at 912.)  Plaintiff was diagnosed with, inter alia, PTSD, schizoaffective disorder, and alcohol dependence in remission.  (*Id.* at 910-913.)  On July 17, 2001, Dr. Kathleen Fortner, who was still a staff psychologist at the Montrose VA hospital, wrote a letter regarding Plaintiff's condition, which appears to have been sent to the VA as part of Plaintiff's application for veterans benefits.  (*Id.* at 910, 915.)  The letter, which Plaintiff argues is a retrospective diagnosis, states:

> [Plaintiff] is a Vietnam combat veteran.  He served in the US Air Force from 6/28/67 to 6/4/70.  He was in Vietnam in 1969.
>
> [Plaintiff] has a long history of severe, chronic PTSD directly related to his experiences in the service during the Vietnam War. He had many traumatic experiences which he remembers in nightmares and in flashbacks.  However, the one which distresses him the most is of his buddy's head being blown off and of him holding the body. . . . The vet reacted to the trauma of the War with a sense of horror and helplessness.  He reportedly received a medical discharge from the Air Force.
>
> When [Plaintiff] returned from Vietnam, he was not the same person, per his family and his report.  He isolated from everybody to the extent that he lived in a box near a dumpster on the streets of

Bayonne, N.J. for years. He would not leave his box despite his family's urging. He had auditory hallucinations for years, isolated from everyone, was unable to recall some of the traumas until very recently and had suicidal ideation. In 1997, he informed the local police that he was suicidal and then he was hospitalized in a local hospital in Bayonne for a week. From there, he was sent to the VA Hudson Valley, first to the Dual Diagnosis Rehabilitation Unit and then for long term psychiatric care. He had serious symptoms. He heard voices chronically, sometimes screams and gunfire. At times, the voices would tell him to kill himself. He required various medications which only partially relieved his symptoms.

On this admission, he described disabling flashbacks and nightmares. He has constant intrusive thoughts and continues to hear the voices. He tends to become depressed, helpless and unable to function. At the present time, he remains in the High Intensity General Psychiatry Unit.

[Plaintiff's] symptoms of PTSD were caused by the War. They are a direct result of the trauma that he experienced and his helplessness in dealing with what he saw. He is 100% disabled for any type of work due to PTSD. Any assistance that can be provided this worthy veteran will be greatly appreciated.

(*Id.* at 910-11.)

### 3. Applications for Veterans and Social Security Insurance Benefits

Plaintiff applied to the VA for veterans benefits in 1987, but his application was denied for failure to establish a service connection to his claimed PTSD. (*Id.* at 960-64.) The VA stated that Plaintiff's medical conditions were due to "habitual excess drinking." (*Id.* at 963.) Plaintiff claims that he applied again in 1993 and 1997, and that each time his application was denied because he was unable to provide sufficient documentation. (*Id.* at 915.) Plaintiff appears to have again applied for veterans benefits in 2000, and on August 12, 2002, the VA sent Plaintiff a letter stating that it had determined that he was 100% disabled due to PTSD as of March 9, 2000. (*Id.* at 918-23.) On August 21, 2002, the VA sent Plaintiff a letter stating that it was correcting

its previous decision and that Plaintiff was determined to have been disabled by PTSD effective March 11, 1997.  (*Id.* at 924.)

Plaintiff also applied for Social Security Insurance ("SSI") benefits in May 1999.  (*Id.* at 15.)  Although the Social Security Administration ("SSA") deemed Plaintiff disabled, he did not receive benefits at that time because he was in a VA hospital.  (*Id.*)  In March 2000, Plaintiff again applied for SSI benefits, was again determined to be disabled, and received those benefits because he was in a congregate care facility.  (*Id.*)  Plaintiff stopped receiving SSI benefits in September 2002 because his veterans benefits increased to more than $2,000.  (*Id.* at 16.)

## B.  Procedural Background

Plaintiff applied for SSDI benefits on March 24, 2001, claiming an inability to work since June 1, 1984.  (*Id.* at 73-75.)  The SSA denied Plaintiff's claim on November 13, 2001, and Plaintiff requested a hearing before an ALJ.  (*Id.* at 40-49.)  The ALJ held a hearing on October 26, 2004, which consisted solely of Plaintiff's testimony.  (*Id.* at 1005-24.)  On December 1, 2004, the ALJ issued a decision denying Plaintiff's claim, finding that Plaintiff was not disabled during the relevant period of June 1, 1984 to December 31, 1989.  (*Id.* at 15-19.)  The ALJ noted the lack of evidence from the relevant time period, except for one medical record regarding Plaintiff's treatment for a leg laceration, and that the earliest medical evidence discusses Plaintiff's alcohol abuse.  (*Id.* at 18.)  The ALJ noted that the "VA has had all [of Plaintiff's] medical records [], yet found him disabled only as of March 1997."  (*Id.*)  In sum, the ALJ found that, although "ample evidence" existed in the record of Plaintiff's "mental health problems after" the last insured date, he "would be speculating to fix an earlier onset date, as there [was] no specific medical evidence to establish a disability" prior to that date.  (*Id* at 18-19.) (emphasis

in original)  On June 24, 2005, the Appeals Council denied Plaintiff's request to review the

ALJ's decision.  (*Id.* at 3-5.)

On August 24, 2005, Plaintiff filed the instant action in federal court.  (Dkt. No. 1.)  The

Honorable Colleen McMahon, who was originally assigned to this case, referred the case to

Magistrate Judge Smith.  (Dkt. No. 3.)[3]  Both Parties moved for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  (Dkt. Nos. 7, 11.)  On August 11, 2009, Magistrate Judge

Smith issued her R&R recommending that this Court grant Defendant's Motion on the Pleadings

and deny Plaintiff's cross-motion.  (R&R 16-17.)  Plaintiff filed timely objections to the R&R.

(Pl.'s Objections to Recommendation of U.S. Magistrate Judge ("Obj.").)

## II.  Discussion

### A.  Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*,

No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).  Under 28 U.S.C.

§ 636(b)(1) and Fed. R. of Civ. P. 72(b), parties may submit objections to the magistrate judge's

report and recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P.

72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the

recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1).[4]

---

[3] The case was reassigned to the undersigned on August 6, 2007.  (Dkt. No. 10.)

[4]  Fed. R. Civ. P. 72(b)(2) was recently amended to extend the time for objections to
fourteen days, but this amendment does not affect Plaintiff's objections.  *See* Fed. R. Civ. P.
72(b)(2).

Where a party submits timely objections to a report and recommendation, as Plaintiff has here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)). Thus, the Court reviews de novo the issues raised in Plaintiff's timely objections. *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169-70 (S.D.N.Y. 2003) (citing 28 U.S.C. § 636(b)).

When a claimant seeks review of a Social Security hearing regarding disability benefits, the court's function is not to determine whether the appellant is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine *de novo* whether [plaintiff] is disabled." (internal quotation marks omitted) (second alteration in original)); *Riordan v. Barnhart*, No. 06-CV-4773, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) (same); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled *de novo*."). Rather, the Court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (noting that a court will only overturn an ALJ's determination if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Morel v. Massanari*, No. 01-CV-186, 2001 WL 776950, at *5 (S.D.N.Y. July 11, 2001) ("[T]he role of the district court is quite limited and

substantial deference is to be afforded the Commissioner's decision." (internal quotation marks omitted)). The Supreme Court has defined "substantial evidence" as "more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

"To be eligible to receive [SSDI] benefits, "an applicant must be insured for disability insurance benefits." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal quotation marks omitted); *see also* 42 U.S.C. §§ 423(a)(1)(A) & 423(c)(1)). Here, the Parties do not dispute that Plaintiff claims he was unable to work due to his disability as of June 1, 1984, that Plaintiff last met the requirements for "insured status" on December 1, 1989, or that, to be eligible for SSDI benefits, Plaintiff must prove that he was disabled within the meaning of the Social Security Act between these two dates. "To be 'disabled' . . . and therefore entitled to benefits, a claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Rosa*, 168 F.3d at 77 (quoting 42 U.S.C. § 423(d)(1)(A)). "Furthermore, an individual's impairment must be 'of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)).

To determine whether a claimant is entitled to disability benefits, the ALJ must follow the familiar five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a); *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999). The ALJ initially must determine whether the claimant is currently engaged in substantial gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(I); *id.* § 404.1520(b); *Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002). If the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits the claimant's ability to participate in work-related activities. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *id.* § 404.1520(c); *Williams*, 204 F.3d at 49. If so, the ALJ determines whether the impairment is listed in 20 C.F.R. § 404.1520, Part 404, Subpart P, Appendix 1, and, if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* § 404.1520(d). If the impairment does not meet or equal the criteria of a listed impairment, the ALJ must determine whether the claimant retains functional capacity to perform his or her past work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *id.* § 404.1520(e). Where a claimant is thereafter deemed unable to perform the claimant's past work, the ALJ proceeds to the fifth step, which "requires the [ALJ] to determine whether there is other work within the national economy that the [claimant] is qualified to perform." *Peterson*, 219 F. Supp. 2d at 493; *see also* 20 C.F.R. § 404.1520(a)(4)(v); *id.* § 404.1520(f)-(g) (noting that the ALJ must show that there are other jobs existing based on the claimant's vocational factors, which include age, education, and work experience, as well as the claimant's residual functional capacity). If so, then the ALJ will determine that the individual is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled."). The claimant has the burden of proof for the first four steps, but the burden rests with the

Commissioner as to the fifth step — the determination on alternative work.  *See Peterson*, 219 F. Supp. 2d at 493; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the Commissioner is required to bear the burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step"; for instance, "[i]f the process ends at step two, the burden of proof never shifts").

### C.  Treating Physician Rule & Retrospective Diagnosis

Plaintiff objects to Magistrate Judge Smith's conclusion that the ALJ did not err in failing to give Dr. Fortner's July 17, 2001 letter controlling weight under the "treating physician rule" or significant weight as a retrospective diagnosis.  (Obj. 2-7.)  Plaintiff argues that the ALJ failed to consider Dr. Fortner's letter, which showed "he was 100% disabled as a result of" PTSD.  (*Id.* at 4.)  Plaintiff also argues that his testimony and the evidence from the Montrose VA hospital show that he was disabled during the relevant time period.  (*Id.* at 7-8.)

Pursuant to the treating physician rule, an ALJ is required to give "controlling weight" to the medical opinion of an applicant's treating physician if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  The treating physician rule, however, does not technically apply when the physician was not the treating physician at all during the relevant time period.  *See Monette v. Astrue*, 269 Fed. App'x 109, 112 (2d Cir. 2008) (summary order) (finding that claimant's request for application of the treating physician rule was "unavailing because [the doctor] . . . was not a treating physician during the period in contention"); *Blanda v. Astrue*, No. 05-CV-5723, 2008 WL 2371419, at *13 (E.D.N.Y. June 9, 2008) (noting that a physician's opinion was "not entitled to controlling weight as he was not a

treating physician during the period in contention"). Nonetheless, "the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." *Monette*, 269 Fed. App'x at 113; *see also Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (noting that although the subsequent treating physician "did not treat the appellant during the relevant period . . . his opinion is still entitled to significant weight"); *Campbell v. Astrue*, 596 F. Supp. 2d 446, 452 (D. Conn. 2009) (hereinafter, *Campbell II*) (noting that a "retrospective medical diagnosis by a subsequent treating physician is entitled to controlling weight when 'no medical opinion in evidence contradicts a doctor's retrospective diagnosis finding a disability'" (quoting *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991)) (internal brackets omitted)).

Relatedly, the ALJ "cannot reject the treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa*, 168 F.3d at 79. This is because an "ALJ generally has an affirmative obligation to develop the administrative record," which "exists even when the claimant is represented by counsel . . . ." *Perez v. Charter*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Butts*, 388 F.3d at 386 ("[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." (internal quotation marks omitted)); *Blanda*, 2008 WL 2371419, at *7 ("It is the rule in [the Second Circuit] that the ALJ, unlike a judge in a trial, must affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." (internal quotation marks and ellipsis omitted)). Specifically, regulations promulgated by the SSA require it to "seek additional evidence or clarification" from treating sources whose reports "contain[] a conflict or ambiguity that must be resolved" or are "inadequate for [the Commissioner] to determine whether [the claimant] is disabled. 20 C.F.R. §

404.1512(e); *see also Blanda*, 2008 WL 2371419, at *7 (same). Moreover, "[i]f the information obtained from the claimant's medical sources is not sufficient to make a disability determination, or [if] the [SSA] is unable to seek clarification from treating sources," the SSA "will ask the claimant to attend one or more consultative evaluations." *Blanda*, 2008 WL 2371419, at *7; *see also Martinez v. Massanari*, 242 F. Supp. 2d 372, 376 (S.D.N.Y. 2003) (noting that the SSA must, "if necessary, arrange for consultive examinations with other medical sources, for clarification or supplementation"); 20 C.F.R. § 404.1512(e).

Although Plaintiff argues that Dr. Fortner's opinion is entitled to controlling weight under the treating physician rule, Magistrate Judge Smith correctly noted that the treating physician rule should not be applied here because Dr. Fortner was not Plaintiff's treating physician during the relevant time period. *See Monette*, 269 Fed. App'x at 112-13; *Campbell II*, 596 F. Supp. 2d at 452 (finding that "the treating physician rules [did] not apply" because the doctor "was not [the claimant's] treating physician during the relevant period"). However, Dr. Fortner was Plaintiff's treating physician for several months in 1997 ®. 128, 134, 138, 139-40, 144, 147, 150, 152-53, 160, 169), and her notes consistently refer to Plaintiff's PTSD symptoms, such as flashbacks and nightmares, (*id.* 128-128A, 134, 138, 147). Accordingly, although a retrospective opinion by Dr. Fortner would not be entitled to controlling weight, it would be entitled to significant weight. *See Monette*, 269 Fed. App'x at 112-13; *see also Campbell II*, 596 F. Supp. 2d at 452 (noting that a subsequent treating physician's retrospective opinion could be "entitled to significant weight"); *Blanda*, 2008 WL 2371419, at *13 (noting that although a physician's letter was not entitled to controlling weight because "he was not a treating physician during the period in contention," the opinion could still be given significant weight).

Unfortunately, as Magistrate Judge Smith noted, Dr. Fortner's 2001 letter is less than clear. Although Dr. Fortner states that Plaintiff "has a long history of severe, chronic PTSD directly related to his experiences" in Vietnam, that he "was not the same person" when he returned from Vietnam, and that his "symptoms of PTSD were caused by" Vietnam, her letter does not explicitly indicate that the PTSD diagnosis dates back to the relevant time period. (R. 910.) Thus, it is difficult to tell if her opinion was meant to be a retrospective diagnosis or if she believed that she could not make such a diagnosis. Adding to the confusion, the ALJ did not specifically address Dr. Fortner's letter at all. As a result, it is unclear whether the ALJ believed the letter was a retrospective diagnosis that was not entitled to significant weight because it was contradicted by substantial evidence, whether the ALJ did not believe the letter was a retrospective diagnosis, or whether the letter was simply overlooked.

In this situation, the case of *Martinez v. Massanari*, is instructive. In *Martinez*, the plaintiff's physician, who treated her after the relevant time period, diagnosed her with severe back problems, referencing a past surgery that occurred during the relevant period. The ALJ found that the plaintiff had not met her burden of showing a severe impairment during the relevant time period when, inter alia, there were "no contemporaneous medical records of treatment through the date that the claimant was last insured." 242 F. Supp. 2d at 377. The district court found that the ALJ erred by failing to consider whether the physician's assessment was entitled to significant weight as a retrospective diagnosis. *Id.* Specifically, the court noted that the physician's conclusions regarding the plaintiff's pain explicitly extended back into the insured period, but that it was unclear whether the "diagnoses . . . relate[d] back into the insured period." *Id.* The court noted that if the evidence was "insufficient for the ALJ to form a conclusion regarding the reliability of the assessments . . . he was obligated to supplement the

15

record with clarifying evidence." *Id.*  Moreover, the court found that it could not decide whether the ALJ's decision was supported by substantial evidence when the "record itself is deficient insofar as it does not clearly address the matter of retrospective diagnosis." *Id.* at 378 n.3.  As a result, the court remanded the case for further consideration of a possible retrospective diagnosis. *Id.* at 380; *see also Campbell v. Barnhart*, 178 F. Supp. 2d 123, 136-37 (D. Conn. 2001) (hereinafter, *Campbell I*) (remanding case after finding that the ALJ could not reject a treating physician's retrospective diagnosis "without first attempting to fill any clear gaps in the administrative record" because the ALJ has a duty to seek clarification if a physician's report is incomplete) (omitting internal quotation).

Here, like in *Martinez*, the ALJ concluded that Plaintiff was not disabled during the relevant time period primarily because "there [was] no specific medical evidence to establish a 'disability'" during the time period, other than Plaintiff's "own evaluation that he was 'disabled' since 1984." ®. 18-19.)  The ALJ also stressed that Plaintiff did not submit any mental health treatment records from 1987-1994, despite acknowledging that Plaintiff was homeless during this period.  (*Id.* at 18.)[5]  However, the ALJ did not discuss Dr. Fortner's report, which at least

---

[5] The ALJ also concluded that the only medical record from the relevant time period, which related to a one-day hospitalization for a leg laceration in July 1997, contradicted Plaintiff's accounts of suffering from PTSD because this record did not mention any mental health symptoms, and that Plaintiff's testimony was contradicted by records from 1994 diagnosing Plaintiff with alcohol problems.  (*Id.* at 18, 983-1000.)  First, the Court notes that the records from 1994 also mention potential PTSD problems (*id.* at 858-62 (diagnosing Plaintiff with, inter alia, alcohol dependence and borderline personality disorder, and noting Plaintiff's possible history of PTSD); *id.* at 878-88 (diagnosing Plaintiff with alcohol dependence and noting that Plaintiff reported PTSD issues such as screaming out at night).  Furthermore, Plaintiff reported abusing alcohol to self-medicate his PTSD symptoms because the VA did not recognize PTSD.  (*Id.* at 1015.)  In any event, the Court cannot evaluate whether the decision is based on substantial evidence when the record has not been fully developed to address Dr. Fortner's potential retrospective diagnosis.  *See Martinez*, 242 F. Supp. 2d at 378 n.3.

implied that Plaintiff's symptoms of PTSD could have existed during the relevant period. *See Martinez*, 242 F. Supp. 2d at 378 (noting that the ALJ's analysis lacked any discussion of retrospective diagnosis). And, just as the ALJ in *Martinez* did not clarify the treating physician's ambiguous report, the ALJ here does not appear to have made any attempt to fill the gaps in the administrative record. For example, despite finding that he could not speculate about Plaintiff's disability and despite stating that reasonable attempts to develop the record were made, there is no indication that Dr. Fortner was contacted for further information or that any of Plaintiff's many other past (or current) treating physicians were contacted and asked about the possibility of providing a retrospective diagnosis. *See Molt v. Comm'r of Social Sec.*, No. 05-CV-418, 2009 WL 5214920, at *6 (N.D.N.Y. Dec. 28, 2009) (remanding case in which plaintiff was required to show mental disability during a previous period because the ALJ failed to develop the record when there was "no indication from the record that the ALJ requested her treating sources supply opinions"); *see also Martinez v. Barnhart*, 262 F. Supp. 2d 40, 47 (W.D.N.Y. 2003) (noting that a treating physician could give a retrospective diagnosis regarding the onset of the plaintiff's PTSD based on information gathered from the claimant and his family). Furthermore, to the extent Plaintiff's treating physicians cannot provide sufficient information about the relevant time period, the ALJ should at least consider sending Plaintiff for a consultative examination. *See Molt*, 2009 WL 5214920, at *6 (noting that if the plaintiff's treating psychiatrist is unable to provide an assessment, the ALJ was obligated to send the plaintiff to a psychiatric consultative exam); *see also Wenk v. Barnhart*, 340 F. Supp. 2d 313, 322-23 (E.D.N.Y. 2004) (remanding case after finding that it was error for the Appeals Council to discredit a retrospective diagnosis "solely on the basis that [the plaintiff's] medical records [were] no longer available," noting that the ALJ should consider sending the plaintiff for a consultative examination); *see generally* 20

C.F.R. § 404.1512(e).  In sum, it was legal error for the ALJ to rely on Plaintiff's lack of evidence from the relevant time period to deny benefits without first attempting to adequately develop the record, or to "pursue or consider the possibility of retrospective diagnosis" based on Dr. Fortner's letter or on the opinions of Plaintiff's other treating physicians.  *See Martinez*, 242 F. Supp. 2d at 378 (finding that the ALJ was obligated to "explore the possibility that the diagnoses applie[d] retrospectively to the insured period" instead of ignoring this possibility and "concentrating instead on the absence of contemporaneous diagnosis and testing during the insured period"); *see also Campbell I*, 178 F. Supp. 2d at 137 (remanding case when ALJ rejected retrospective diagnosis from the plaintiff's treating physician without first attempting to clarify the basis of the diagnosis).

### C.  Inferring Onset Date Pursuant to Social Security Ruling 83-20

Although neither Party has addressed this issue, the Court notes that the ALJ also committed legal error by failing to determine the onset date of Plaintiff's PTSD in accordance with Social Security Ruling 83-20 ("SSR 83-20") or to request the help of a medical advisor in inferring the onset date.  *See generally* SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983).  SSR 83-20 provides rules for determining the onset date of a disability.  *See id.*; *see also Dhanraj v. Barnhart*, No. 04-CV-5537, 2006 WL 1148105, at *6 (S.D.N.Y. May 1, 2006) (noting that "the ALJ must determine the onset of a disability in accordance with SSR 83-20").  While courts have held "that an ALJ's failure to explicitly rely on SSR 83-20 is harmless error, to the extent that the dictates of the decision are nonetheless followed . . . the absence of contemporaneous medical records does not preclude a finding of disability."  *Plumley v. Astrue*, No. 09-CV-42, 2010 WL 520271, at *6-7 (D. Vt. Feb. 9, 2010); *see also Manago v. Barnhart*, 321 F. Supp. 2d 559, 569 (E.D.N.Y. 2004) ("[T]he absence of contemporaneous medical records does not

18

preclude a finding that claimant was disabled prior to the expiration of insured status. Rather, onset of disability may be inferred in accordance with the criteria set forth in SSR 83-20."). Here, the SSA determined that Plaintiff was disabled as of 1998, when he first applied for SSI benefits, but an onset date is required to determine if Plaintiff is eligible for SSDI benefits. ®. 15-16); *see Dhanraj*, 2006 WL 1148105, at *6.

SSR 83-20 provides that for disabilities without a "traumatic origin," the Commissioner should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity," and that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20, 1983 WL 31249, at *2; *Plumley*, 2010 WL 520271, at *5-6 (analyzing the plaintiff's PTSD under SSR 83-20' s rules for non-traumatic origin disabilities); *Martinez*, 262 F. Supp. 2d at 45-47 (applying SSR 83-20's non-traumatic origin disability rules to PTSD). Specifically, SSR 83-20 notes that when precise information is not available, "it may be possible, based on the medical evidence[,] to reasonably infer that the onset of a disabling impairment[] occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." SSR 83-20, 1983 WL 31249, at *3. "This judgment, however, must have a legitimate medical basis." *Id.* Moreover, in cases involving "currently or previously hospitalized claimants alleging disability on the basis of a psychiatric impairment," the ALJ should consider medical reports from attending physicians, medical histories "describ[ing] an onset of pronounced mental symptoms at some time prior to admission to the hospital," and statements of hospital medical staff. *Id.* at *3-4. Importantly, when the evidence in the record is ambiguous, the ALJ must seek the advice of a medical advisor in trying to infer an onset date. *Id.* at *3; *see Plumley*, 2010 WL 520271, at *5 (finding that the ALJ erred

19

by failing to request a medical advisor's assistance in inferring the onset date of the plaintiff's PTSD when the medical evidence in the record was ambiguous).

Here, the ALJ decided that it would be speculation to try and infer an onset date prior to 1997 because of the lack of contemporaneous medical records during the relevant time period and because of the VA's prior determination. ®. 18-19.) However, many of the medical reports from Plaintiff's treating physicians and the medical histories during his hospitalizations describe Plaintiff as having a long history of PTSD symptoms and mental health problems, creating at least an ambiguity regarding Plaintiff's onset date. (*Id.* at 588-91 (transfer record of Manhattan VA hospital, summarizing Plaintiff's hospitalization in 1997 and stating that Plaintiff reported flashbacks from Vietnam and reported seeing death everywhere and seeing faces of people of Vietnam); *id.* at 268 (hospital record of Dr. Michael Hwang, dated August 25, 1998, diagnosing Plaintiff with chronic PTSD and stating that Plaintiff reported twenty-year history of PTSD including flashbacks, vivid dreams, and hallucinations related to his battle experience in Vietnam); *id.* at 104 (hospital record of Dr. Hwang, dated June 28, 1999, noting history of PTSD and "long history of psychotic disorder); *id.* at 512 (hospital record of Dr. Arnold Mitchell, dated August 29, 2000, stating that Plaintiff had PTSD symptoms for over thirty years, had severe flashbacks sparked by stimuli such as airplanes or fireworks, and heard Vietnam combat sounds). Thus, although the ALJ noted the existence of this evidence, it was error for him to not even consider that these hospitalization records could aid in inferring Plaintiff's onset date as a date prior to the hospitalizations. *See Plumley*, 2010 WL 520271, at *6-7 (noting that the plaintiff's hospital records from several years after the claimed onset date diagnosed the plaintiff with PTSD and detailed symptoms such as flashbacks). Indeed, despite this ambiguous

evidence, the ALJ did not seek the advice of a medical advisor to aid in inferring an onset date.[6]

Accordingly, the ALJ committed error warranting remand by failing to consult a medical advisor

to assist in inferring the onset date of Plaintiff's PTSD in the face of ambiguous evidence and by

failing to consider the possibility of inferring an earlier onset date based on the hospital reports

and histories, the nature of PTSD, or the potential retrospective diagnosis of Dr. Fortner. *See*

*Plumley*, 2010 WL 520271, at *6-7, 10 (remanding case in light of SSR 83-20 and failure to hire

medical advisor, noting that the absence of treatment records was "not so remarkable when

dealing with mental illnesses such as PTSD and adjustment disorder, which often go untreated

for long periods of time"); *Martinez*, 262 F. Supp. 2d at 47 (remanding case when ALJ failed to

hire medical advisor to aid in determining onset date of PTSD when there was no

contemporaneous medical records); *see also Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995)

("Although PTSD may not be degenerative in the same classic sense as a condition like diabetes,

PTSD is an unstable condition that may not manifest itself until well after the stressful event

which caused it, and may wax and wane after manifestation.").

D. Disposition

Pursuant to sentence four of 42 U.S.C. § 405(g), a district court may "enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g); *see also LoRusso v. Astrue*, No. 08-CV-3467, 2010 WL

1292300, at *7 (E.D.N.Y. Mar. 31, 2010) (same). "[I]n cases where the ALJ failed to develop

---

[6] The record contains two documents titled "Request for Medical Advice," both of which are dated over a year prior to Plaintiff's request for a hearing before the ALJ. R. 766 (request for medical advice dated July 17, 2001); *id.* at 838 (request for medical advice dated February 14, 2002; *id.* at 40 (request for hearing by ALJ filed on March 23, 2003)).

the record sufficiently to make appropriate disability determinations, a remand for further findings that would so plainly help to assure the proper disposition of the claim is particularly appropriate." *Butts*, 388 F.3d at 386 (internal quotation marks, brackets, and ellipses omitted); *cf. Martinez*, 262 F. Supp. 2d at 49 (finding that remand solely for the calculation of benefits, as opposed to further evidentiary proceedings before the ALJ, was appropriate "[w]here the existing record contain[ed] persuasive proof of disability and a remand for further evidentiary proceedings would [have] serve[d] no further purpose" ). Here, because the ALJ did not fully develop the record or attempt to infer the onset date pursuant to SSR 83-20, the Court cannot properly determine if disability benefits are warranted, making further evidentiary proceedings before the ALJ appropriate. *See Plumley*, 2010 WL 520271, at *14 (remanding case for further proceedings before the ALJ because the ALJ failed to consult "a medical advisor to assist in inferring an onset date" for the plaintiff's PTSD when the evidence was ambiguous); *Molt*, 2009 WL 5214920, at *6 (remanding case for further proceedings before the ALJ when the ALJ failed to, inter alia, fully develop the record by contacting the plaintiff's treating physicians); *Tornatore v. Barnhart*, No. 05-CV-6858, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (finding that the ALJ's decision was "based on legal error" and remanding the case for rehearing "[b]ecause the ALJ did not fully meet his obligations with respect to . . . the treating-physician rule[] [and] the duty to develop the record").[7]

---

[7] Because the Court remands this case to the ALJ pursuant to sentence four of 42 U.S.C. § 405(g), the Court need not address Plaintiff's request for this Court to consider new evidence that was not put before the ALJ or Magistrate Judge Smith. Specifically, Plaintiff proffers a medical record from the Lyons VA Medical Center showing that he was hospitalized there during the relevant period from October 19, 1987 until November 12, 1987, which diagnosed him with, inter alia, "Alcohol Dependence" and "Post Traumatic Stress Disorder, Delayed, Mild." (Obj. 3; *id.* at unnumbered page 11-13.) The report provides that Plaintiff had a thirteen-year drinking problem, had "some flashback experiences" related to Vietnam, and complained

### III. Conclusion

For the reasons stated herein, Defendant's Motion for Judgment on the Pleadings is
denied and Plaintiff's Motion for Judgment on the Pleadings is granted in part and denied in part.
The final decision of the Commissioner is reversed and the Court remands the matter for further
proceedings in accordance with this ruling. The Clerk of Court is respectively requested to close
this case.

SO ORDERED.

Dated:      September 28, 2012
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

during therapy that his Vietnam experiences were related to past suicidal intentions. (*Id.* at
unnumbered page 12.) Additionally, the report states that Plaintiff was upset when he was
turned down for a PTSD inpatient program and that, at discharge, he was considered fully
employable. (*Id.* at unnumbered page 13.) Pursuant to sentence six of 42 U.S.C. § 405(g), a
court "may at any time order additional evidence to be taken before the Secretary, but only upon
a showing that there is new evidence which is material and that there is good cause for the
failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g);
*see also Tornatore*, 2006 WL 3714649, at *2 n.1 (same); *see also Tirado v. Bowen*, 842 F.2d
595, 597 (2d Cir. 1988) (noting that to warrant a sentence-six remand a claimant must show that
the proffered evidence is "'new' and not merely cumulative of what is already in the record," is
"material . . . [meaning] both relevant to the claimant's condition during the time for which
benefits were denied and probative," and that there is "good cause for [the] failure to present the
evidence earlier"). Although Defendant argues that Plaintiff has not met the requirements for a
sentence-six remand, this issue is mooted by the Court's remand pursuant to sentence four. *See
Tornatore*, 2006 WL 3714649, at *6 n.5 (noting that plaintiff's request for the court to consider
new information was moot because a remand was warranted based on sentence-four). The Court
expresses no view on whether the ALJ may consider this evidence when attempting to properly
and fully develop the record, leaving this issue to be decided in the first instance by the ALJ.
*See id.*

23

Service List (via ECF)

Irwin B. Silverman, Esq.
Law Office Allyson J. Silverman
166 East Central Avenue
Spring Valley, NY 10977
(914) 425-1642

Susan D. Baird, Esq.
United States Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2200

Susan Colleen Branagan, Esq.
United States Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007
(212) 637-2804